UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITES STATES OF AMERICA ) | |
| ) | |
| v. ) | Case Number: 3:19-cr-00091-DRL |
| ) | |
| TERRY O. COTTRELL ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

Comes now the United States of America by Clifford D. Johnson, United States Attorney for the Northern District of Indiana, and by John M. Maciejczyk, Assistant United States Attorney, and submits the following memorandum in preparation for the sentencing hearing in this case.

1. On July 15, 2021, the defendant pled guilty to a one count Indictment charging him with Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).

2. The Final Presentence Report ("PSR"), dated September 2, 2021, Dkt. 63, was not objected to by either party. Dkt. 64.

3. The PSR calculates a guideline range for this defendant of 97 to 120 months. PSR ¶ 97. The fine guideline range is $25,500 to $250,000. PSR ¶ 99. Given the defendant's financial situation, a fine is not recommended. PSR ¶ 89. He is required to pay a $100 mandatory special assessment. PSR ¶ 98. The defendant may also be assessed up to $17,000

pursuant to the Amy Vicky Andy Child Pornography Assistance Act of 2018 ("AVAA"), 18 USC § 2259A(a)(2) as determined by the Court. PSR ¶ 103. He is subject to the provisions of the Justice for Victims of Trafficking Act of 2015 ("JVTA"),[1] 18 U.S.C. § 3014, under which the court shall assess an amount of $5,000, upon any non-indigent person convicted of an offense such as the defendant's. Supervised release upon completion of the sentence of confinement is from five years to life. PSR ¶ 93-94.

4. The government did not agree to recommend a particular a sentence due to the plea being without agreement. As detailed below, the government recommends a sentence of 97 months imprisonment at the bottom of the guideline range, to be followed by 10 years supervised release and no fine. Given that the defendant will be required to pay a significant amount in restitution, the government recommends no assessment under the AVAA, no assessment under the JVTA, and the standard $100 special assessment.

5. In 2020, 1,020 cases were sentenced under U.S.S.G. § 2G2.2.[2] Sourcebook, Table 20. Section 2G2.2 covers child pornography offenses

---

[1] The JVTA was set to expire on September 21, 2021, but was extended through the end of the year by H.R. 5305, Pub. Law. No. 117-43, signed into law on September 30, 2021.

[2] The statistics referenced are from the U.S.Sentencing Commission's 2020 Sourcebook of Federal Sentencing Statistics and the attached tables. https://www.ussc.gov/research/sourcebook-2019. This document will be referred to as "Sourcebook."

except for production, which is covered under § 2G2.1. Of these 1,020 cases, 30.6% were sentenced within the guideline range, 1.1% were sentenced above the guideline range and 66.2% were sentenced below the guideline range. *Id*. Table 31. Of the sentences below the guideline range, the mean and median sentences were 79 and 72 months respectively, and the downward departure was a mean of 38.9% and a median of 38.1%. *Id*. Table 40. Because approximately a third of sentences are within the guideline range, and two thirds are below the guideline range, it isn't possible to calculate where an average sentence would fall with respect to the guideline range based on these figures. The recommended sentence is at the bottom of the range.

6. The Seventh Circuit has stated that while many courts may depart downward in § 2G2.2 cases, "it is not true that they must." *United States v. Oberg*, 877 F.3d 261, 264 (7th Cir. 2017*), citing United States v. Huffstatler*, 571 F.3d 620, 623–24 (7th Cir. 2009). In *Oberg* the district court judge "properly exercised his discretion in imposing a within-Guidelines sentence. He considered Oberg's policy argument but found it unpersuasive because Congress created the Sentencing Commission and it was 'their choice' to give the commission 'some direction.' The judge also acknowledged that he was not bound by the Guidelines but said that he believed their recommendation was appropriate. This is 'exactly what [the judge] was supposed to do.'" 877

F.3d at 264.

7. Thirteen victims have requested restitution. A separate memorandum has been filed under seal for restitution totaling $39,000. Dkt. 68.

8. The application of 18 U.S.C. § 3553(a) factors supports the recommended sentence. These factors include the following:

**(1) the nature and circumstances of the offense and the history and characteristics of the defendant;**

The factual basis of the offense is contained in paragraphs 4-7 of the PSR. As discussed below in the Victim Impact section, child pornography is not a victimless crime and the nature and circumstances of the offense are serious. The possession of these images clearly contributes to the harm to the victims. *See New York v. Ferber*, 458 U.S. 747, 759 n. 10 (1982), *citing Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation*, 12 U.Mich.J. Law Reform 295, 301 (1979) ("The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child"); *United States v. Dean*, 705 F.3d 745, 749 n. 3 (7th Cir. 2013) (" We have rejected the notion that merely viewing child pornography is a victimless crime."); *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) ( The greater the customer demand for child pornography, the more that will be produced.... The logic of

4

deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.). Another aggravating aspect of the offense is that Cottrell had a rather extensive collection: 9,335 images and 7 videos of child pornography, which also contained images of bondage, bestiality and infants. PSR ¶ 7. The number of victim impact statements and the number of restitution requests, both of which are unusually high also can be contributed to the extent of Cottrell's collection of child pornography.

Otherwise, the factual circumstances are both aggravating and mitigating. As noted in the PSR: *"The defendant's criminal history in relation to a pattern of sexual acts are also seen in aggravation as he broke into a library in 2003 and self-reported looking up child pornography on a library computer; he has a dismissed criminal case under cause number 09D02-0901-FA-000001 in which an involuntary commitment to the Logansport State Hospital was ordered for alleged serious sexual offenses with minor victims; and now his current federal case involves being in possession of child pornography.. . . Additional aggravating factors are the defendant's lack of education and no permanent legal residence."* PSR ¶ 109-10.

Mitigating factors include *"the defendant's traumatic childhood as it pertains to the loss of his mother, sexual victimization by family members and neighbors, abuse endured in foster care, and multiple residential facility stays.*

5

*Another factor would be his family support, as his brother has been caring towards him during this criminal matter. The defendant's low cognitive ability, previous special education status, level of functioning, and low self-image is also seen in mitigation.*" PSR ¶ 111-12.

On balance the two factors, nature and circumstances of the offense and the history and characteristics of the defendant, are aggravating.

**(2) the need for the sentence imposed—**

**(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

A sentence of 97 months for this 36-year-old offender will adequately reflect the seriousness of the offense.

**(B) to afford adequate deterrence to criminal conduct;**

**(C) to protect the public from further crimes of the defendant; and**

A sentence of 97 months will provide deterrence to others who may contemplate committing similar crimes. One particular concern is the defendant's potential to recidivate. His history shows an inclination to pedophelia. This is based on his diagnosis from the Four County Counseling Center and by Dr. Robin Watkins, both for pedophilic disorder, PSR ¶ 67, 70, and his history of child related offenses. PSR ¶ 28-29, 39-40. Although he was not convicted of the 15 counts of child victim related offenses charged in 2009, PSR ¶ 39-40, as a result of these charges he was involuntarily

6

committed to the Logansport State Hospital and not released until 2017. PSR ¶ 40.

> **(3) the kinds of sentences available;**
>
> **(4) the kinds of sentence and the sentencing range established for—**
>
> **(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--**

These factors support a sentence within the guideline range because they argue for uniform sentencing practices, and the guidelines are designed to achieve this outcome: "The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). However, here, as discussed above, courts usually do not follow the guidelines in these types of cases.

> **(5) any pertinent policy statement.**

The sentencing guidelines policy statements state that sometimes mental and emotional conditions "may be relevant" if those conditions "are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.3. The government does not believe that this sort of situation is present here. To the extent that the defendant may have severe mental and emotional conditions, this is counterbalance by the consideration of protecting the public from further crimes of the defendant.

**(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and**

In this case a sentence within the guideline range is justified based on the defendant's offense conduct, and his potential for recidivisim based on his criminal history of child related offenses and his pedophilic disorder.

## U.S.S.C. 2012 Report Recommendations

The 2012 U.S.S.C. Report on Federal Child Pornography Offenses ("Report"), which reviewed and recommended changes to the child pornography guidelines suggested the following factors be considered in imposing sentences in §2G2.2 cases:

> 1) the content of an offender's child pornography collection and the nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technology);
> 2) the degree of an offender's engagement with other offenders — in particular, in an Internet "community" devoted to child pornography and child sexual exploitation; and
> 3) whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense.

Report at 320. As discussed above, the defendant's collection contained a significant amount of child pornography also involving minors under the age of 12, bestiality and sadistic content.   There is no indication that he "organized, maintained, and protected his collection over time, including

8

through the use of sophisticated technology." Nor does the government have evidence of Cottrell's "engagement with other offenders." However, there is information that the defendant has a "history of engaging in sexually abusive, exploitative, or predatory conduct" with regard to minors based on his commitment to the state hospital as a result of being charged with 15 child related offenses. PSR ¶ 39-40.

## Victim Impact

The government has filed 32 victim impact statements. R. 26. These statements describe in heartbreaking detail the lasting and continuing impact that the circulation of child pornography has on the victims. An article published in the Journal of Child Abuse & Neglect reports on the lasting impact of child pornography in a study of 133 adult survivors. Gerwirtz-Meyden, Walsh, Wolak, Finkelhor, *The Complex Experience of Child Pornography Survivors*, 80 Child Abuse & Neglect 238-248 (April, 2014). The common themes discovered by the study were:

- Feelings of guilt and shame that the images are being circulated;
- Feelings that someone would think that they were willing participants;
- Concern of being recognized in public;
- Concern of being recognized by friends or acquaintances;
- Refusing to be photographed by family or friends;

*Id.* at 242. Many reported that "they live in constant fear their images will

surface and will be viewed by people they know, their family, or their children. Fears of the images and films circulating impacted their ability to continue with their lives or to let go of the past. Many survivors were triggered daily by the fear of being recognized or exposed." Id. at 244. Many survivors also felt "haunted" by the circulation of the images:

> Experiencing CP seems to encompass two stages of victimization. One, from a legal point of view, when the abuse is perpetrated and recorded and one from a psychological point of view, implying the ongoing vulnerability of survivors and the unknown aspect regarding the circulation of the images. Participants discussed the life-long vulnerability as a result of the images. According to them, while theabuse per se ended, the images will forever be out there, and they felt asif they were haunted by them. Even years after the crime, survivors wereworried that the images might be seen by other people or familymembers, that they would be recognized, or that the images would beused by sex offenders for masturbation or to entice other children intoabusive situations. For many respondents, the images were a concrete reminder of their victimization that could reveal their past, or be usedfor criminal purposes without warning to them and outside of their control.

Id. at 246. Other studies also support the conclusions of the Gerwirtz-Meyden study. *See, e.g.*, Canadian Centre for Child Protection (2017). *Survivor's survey*. Retrieved from https://www.protectchildren.ca/pdfs/C3P_ Survivors SurveyExecutiveSummary2017_en.pdf; Martin, J. (2014). *"It's just an image, right?": Practitioners' understanding of child sexual abuse images online and effects on victims.* Child & Youth Services, 35, 96–115, http://dx.doi.org/10.1080/0145935X.2014.924334.

The victim impact statements submitted, Dkt. 68, confirm these effects

of the continued distribution and collection of their images:

> I asked my daughter what she most wanted to ask of the judge. Her request: "Please, don't let them pretend no one's getting hurt!"  She had some words for the defendant as well: "don't you know no one should do that to a little girl! Don't you know it hurts!"  As the mother of a child victimized by this crime, I would ask that the court take into consideration the damage done by this heartless crime to my daughter and others like her (including those children who still wail for someone to rescue them from their exploitation. and have no-one here today to speak for them ) and impose a sentence that takes into account the full impact of the crime on the victims.

Jan-feb victim impact statement;

> I wonder if they ever think about me while viewing and downloading these images. Do they know how much their actions continue to shape my life? The loneliness I feel, the shame I feel, how I've viewed men throughout my life, my continued struggles, the drinking and drug use, the decision not to finish my education. These people are viewing a damaged person who took years to try to heal herself. The news that my pictures still exist caused a rush of insecurity to come over me all over again.

Linda and Patty victim impact statement;



Hawaiian Purple victim impact statement;

> If you are looking at pictures or videos of me, or any other child for that matter, then you are hurting every one that you look at. Anyone who looks at those horrible pictures of me or other children are abusing us. Anyone who looks is keeping my pain going for the rest of my life. I cry at night because of this. Even though I don't know the names of all of them, I know that they are out there and I am afraid that they are all

11

around me.

Marineland1 victim impact statement;

> I THINK ABOUT THE CHILD PORNOGRAPHY EVERY DAY! There is not one day that goes by that I don't think, with hatred, about the sick and disgusting people who view, trade, save and "get off" on my abuse when I was just a little kid and couldn't defend myself. It is sickening. I feel that every single criminal that is found with mine or another child's imagesshould be held accountable for the highest amount possible to help us victims repair our lives.

Andy victim impact statement;

> Every time someone views this trash, he is once again making me re-live the most horrific part of my childhood. I can never truly heal because the perpetrators and stalkers never allow me to do so. Anyone viewing these videos/pictures is just as guilty for causing me or any other exploited child undue harm, unneeded stress and insecurity in a time when we need to feel safe and have a chance to heal/recover.

Tara victim impact statement;

> [These people are] passing around my trauma like treats at a party and it feels like I am being raped all over again by every one of them . It sickens me to the core, terrifies me and makes me want to cry. So many nights I have cried myself to sleep thinking of a stranger somewhere staring at their computer with images of a naked me on the screen. I have nightmares about it often. I can never feel safe so long as my imagesare out there; every time they are downloaded I am exploited again, my privacy is breached, and I feel in danger again. I fear that any of them may try to find me and do something to me.

Vicky victim impact statement.

## Conclusion

Based on the above, the government requests that the defendant be sentenced to a sentence of 97 months, followed by a 10-year term of supervised release, no fine, no discretionary assessments, a $100 special assessment, and restitution as requested by separate filing, Dkt. 68.

Dated: November 19, 2021

            Respectfully submitted,

            CLIFFORD D. JOHNSON
            ACTING UNITED STATES ATTORNEY

      By:   s/ *John M. Maciejczyk*
           John M. Maciejczyk
           Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on November 19, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to defense counsel.

            s/ *John M. Maciejczyk*
            United States Attorney's Office
            204 S. Main Street, Room M01
            South Bend, IN 46601
            (574) 236-8287